UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HINDS & SHANKMAN, LLP,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD LAPIDES, et al.,<br><br>Defendants. | Case No.: CV 18-10731-CJC(SKx)<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [Dkt. 23] |

I. INTRODUCTION

Plaintiff Hinds & Shankman, LLP ("H&S") brings this action against Defendants Richard A. Lapides, Janis Lapides, and Does 1 through 10. (Dkt. 22 [First Amended Complaint, hereinafter "FAC"].) Before the Court is Defendants' motion to dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 23

[hereinafter "Mot."].)  For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.[1]

## II. BACKGROUND

This lawsuit arises out of Defendants' alleged obligation to pay H&S's attorneys' fees and costs incurred in connection with adversary proceedings in a Chapter 7 bankruptcy case.  H&S is a California limited liability partnership with its principal place of business in Torrance, California.  (FAC ¶ 1.)  Richard A. Lapides ("Richard") and Janis Lapides ("Janis") are a married couple who are residents of Spicewood, Texas.  (*Id.* ¶¶ 2–4.)

In 1987, non-party Jay Johnson sold Richard a piece of real property in La Cañada Flintridge, California.  (*Id.* ¶ 9.)  Prior to the sale, Johnson had claimed that the raw land had water available to it for future development.  (*Id.*)  Later, Richard discovered Johnson had lied, sued him in Los Angeles Superior Court, and obtained a final judgment of $1 million against Johnson.  (*Id.*)  Richard then attempted to collect on this judgment.  (*Id.*)  On April 5, 2001, Jay and Debra Johnson filed a voluntary Chapter 7 case in the United States Bankruptcy Court for the Central District of California.  (*Id.*)  In their Chapter 7 filing, the Johnsons listed at least eight general unsecured creditors, whose claims totaled $1,690,999.  (*Id.* ¶ 10.)  Richard was listed as one of the largest general unsecured creditors, based on his pre-petition judgment against Jay Johnson.  (*Id.*)  The Bankruptcy Court appointed Rosendo Gonzalez as the Trustee.  (*Id.* ¶ 9.)

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for July 1, 2019 at 1:30 p.m. is hereby vacated and off calendar.

The Trustee employed H&S as the estate's general counsel and special litigation counsel to represent the Trustee in various causes of action against the debtors, their business entities, and the debtors' relatives. (*Id.* ¶ 11.) The estate, however, apparently lacked funds to pay for this legal representation. The Trustee approached Richard and asked him if he would be willing to help pay for the prosecution of two adversary proceedings. (*See* Mot. at 3–4.) In September 2004, Richard agreed to pay H&S's attorneys' fees and costs associated with the adversary proceedings. (FAC ¶ 12; *see also id.* Ex. 1.)

In 2014, the Bankruptcy Court held a trial on the Trustee's claims in the two consolidated adversary proceedings. (FAC ¶ 16.) The Bankruptcy Court found against the Trustee. (*Id.*) In June 2017, H&S filed an application for fees and expenses incurred in the adversary proceedings. (*Id.* ¶ 18.) H&S also sought a money judgment against Richard for the amount of the fees and costs. (*Id.*) H&S and Richard proceeded to arbitration regarding the fees and costs. (*Id.* ¶ 19.) In August 2018, the arbitrator issued a final award. (*Id.* ¶ 20; *see id.* Ex. 3.) H&S then filed a petition before the Bankruptcy Court to confirm the award of fees and costs, and the Bankruptcy Court entered an order on December 21, 2018. (*Id.* ¶ 22; *see id.* Ex. 4.) Richard allegedly owes a total of $785,687.97 plus interest in fees and $70,491.91 in costs. (FAC ¶ 22.)

The instant dispute concerns Richard's sale of two properties in California and subsequent purchase of property in Texas, allegedly done to avoid H&S's recovery on its fee award. The first property at issue is located at 5500 La Forest Drive in La Cañada, California. (*Id.* ¶ 23.) Around 1994, Richard transferred 100% of his ownership interest in the La Forest Drive property to his wife, Janis. (*Id.* ¶ 24.) On May 19, 2016, Janis sold her interest in the La Forest Drive property to Margarita Kazaryan for $850,000. (*Id.* ¶ 25.) The second property at issue is located at 5107 Castle Road in La Cañada, California. (*Id.* ¶ 26.) On July 17, 2017, Richard and Janis, who jointly owned the Castle

Road property, sold it for $1,150,000 to Brandon and Cori Cipes. (*Id.* ¶ 27) H&S alleges that Richard and Janis used the proceeds from these two sales to purchase real property located at 23704 Replica Road in Spicewood, Texas, for $1,210,096. (*Id.* ¶¶ 25, 28.) Richard and Janis allegedly purchased the Texas real property to avoid paying Richard's obligation to H&S. (*Id.* ¶ 29.) Purchasing real property in Texas allowed them to take advantage of Texas's more generous homestead exemption laws, which exempt the entire value of the Texas real property from collection. (*Id.*) The transfer allegedly rendered Richard and Janis insolvent and without non-exempt assets against which H&S could lawfully execute to recover its judgment. (*Id.*)

On December 28, 2018, H&S filed this action in federal court. (Dkt. 1.) H&S asserts five causes of action for (1) actual fraudulent transfer, (2) constructive fraudulent transfer, (3) accounting, (4) conspiracy to defraud, and (5) injunctive relief. (FAC ¶¶ 35–56.) H&S asserts that Defendants fraudulently transferred their assets by selling their property in California and purchasing property in Texas. (*See generally id.*)

### III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). The district court may also consider additional facts in

materials that the district court may take judicial notice, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994), as well as "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled in part on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citations and quotes omitted)).  Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

In federal court, a plaintiff alleging fraud must also "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1145 (9th Cir. 2009); *UMG Recordings, Inc. v. Glob. Eagle Entm't*, 117 F. Supp. 3d 1092, 1106 (C.D. Cal. 2015).  Under Rule 9(b), the plaintiff must set forth the "who, what, when, where, and how" of the alleged fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

//

## IV. DISCUSSION

### A.     Actual Fraudulent Transfer (Count I)

H&S's first cause of action is for actual fraudulent transfer. Under the California Uniform Voidable Transactions Act ("CUVTA"), an actual fraudulent transfer consists of "[a] transfer made or obligation incurred by a debtor . . . if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code § 3439.04(a). H&S alleges that Defendants transferred the sales proceeds from the La Forest Drive property and Castle Road property to invest it into real property in Spicewood, Texas, "with actual intent to hinder, delay, or defraud H&S." (FAC ¶¶ 36–37.)

Defendants argue that H&S fails to allege a transfer of assets. "In order for a fraudulent transfer to occur, there must be a *transfer* of an *asset* as defined in the [CUVTA]." *Fidelity Nat'l Title Ins. Co. v. Schroeder*, 179 Cal. App. 4th 834, 841 (2009) (citing Cal. Civ. Code § 3439.04) (emphasis in original). The CUVTA defines a "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, license, and creation of a lien or other encumbrance." Cal. Civ. Code § 3439.01(m). An asset, in turn, is defined by the term "property," which includes "anything that may be the subject of ownership." *Id.* 3439.01(a), (j). As the statute defines "transfer" broadly, the key consideration is whether the action "dispos[ed] of or part[ed] with an asset or an interest in the asset," not whether some third party acquired the asset. *Id.* § 3439.01(m); *Yaesu Elecs. Corp. v. Tamura*, 28 Cal. App. 4th 8, 13 (1994) ("[T]he theory of the law is that it is fraudulent for a judgment debtor to divest himself of assets against which the creditor could execute . . . .").

The First Amended Complaint plausibly alleges a transfer. H&S alleges that Richard and Janis parted with their interests in the La Forest Drive and Castle Drive properties in exchange for a total of $2 million. (FAC ¶¶ 25, 27.) They then parted with $1,210,096 of these sale proceeds to acquire the property in Texas. (*Id.* ¶ 28.) Richard and Janis purchased the property in Texas allegedly "to intentionally hinder, delay, and defraud H&S from collecting on the monetary obligations." (*Id.* ¶ 29.) And they allegedly purchased property in Texas, as opposed to California, because the state has generous homestead exemption laws, making the Texas property entirely exempt from execution and collection by H&S. (*Id.* ¶¶ 31–34.)

Defendants argue there was no transfer because they "retained" an asset, in that they still own the property in Texas. Under the CUVTA, however, a transfer is defined as disposing of or parting with an asset. Based on this definition, there is still a transfer if a debtor parts with an interest in one asset (*i.e.*, cash) in exchange for an interest in another asset (*i.e.*, real property). Defendants cite no authority holding otherwise. And although neither party cites any decision considering this particular issue, several courts have assumed there is a transfer where a debtor converts nonexempt assets into exempt assets, or converts one type of exempt asset into another type of exempt asset. *See, e.g.*, *In re Beverly*, 374 B.R. 221, 240–42 (B.A.P. 9th Cir. 2007) (describing a conversion of funds between exempt assets, or from nonexempt assets to exempt assets, as a transfer); *In re Stern*, 345 F.3d 1026, 1044 (9th Cir. 2003) (same). H&S states a plausible claim for actual fraudulent transfer. Accordingly, Defendants' motion to dismiss the first cause of action is **DENIED**.

### B.  Constructive Fraudulent Transfer (Count II)

H&S's second cause of action is for constructive fraudulent transfer. There are two types of constructive fraud under the CUVTA. Under the first type, a transfer is

constructively fraudulent if the debtor did not receive reasonably equivalent consideration and either "(A) [w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, [or] (B) [i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." Cal. Civ. Code § 3439.04(a)(2). Under the second type, a transfer is constructively fraudulent as to existing creditors if the debtor did not receive reasonably equivalent value and "the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." *Id.* § 3439.05(a).

Defendants argue that H&S fails to state a claim for constructive fraudulent transfer because it does not allege that Richard and Janis failed to receive reasonably equivalent consideration. The Court agrees. The First Amended Complaint alleges only that the 1994 transfer from Richard to Janis of the La Forest Drive property was "without adequate or any consideration." (FAC ¶ 24.) The Court already dismissed with prejudice any constructive fraudulent transfer claim based on the 1994 transfer, as it is barred by the CUVTA's statute of repose. (Dkt. 21.) The First Amended Complaint does not allege that Richard and Janis failed to receive reasonably equivalent consideration for the sales of the La Forest Drive and Castle Drive properties or for the purchase of the Texas property. Defendants' motion to dismiss the second cause of action is **GRANTED**. H&S's constructive fraudulent transfer claim is **DISMISSED WITH FOURTEEN DAYS' LEAVE TO AMEND**.

      **C.**    **Civil Conspiracy to Defraud (Count IV)**

H&S's fourth cause of action is for civil conspiracy to defraud. To state a cause of action for civil conspiracy, a plaintiff must allege (1) the formation and operation of a conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage

resulting from such act or acts. *Younan v. Equifax, Inc.*, 111 Cal. App. 3d 498, 511 n.9 (1980). A civil conspiracy "must be activated by the commission of an actual tort," *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994), or other wrong, *Younan*, 111 Cal. App. 3d at 511 n.9. A fraudulent transfer can serve as the underlying wrongful conduct giving rise to conspiracy liability. *See Lapachelle v. Kim*, 2015 WL 5461542, at *8 (N.D. Cal. Sept. 16, 2015).

Defendants move to dismiss the civil conspiracy claim on the basis that H&S fails to allege a cause of action for fraudulent transfer. As discussed above, H&S states a plausible claim for actual fraudulent transfer. Defendants' motion to dismiss the fourth cause of action is **DENIED**.

### D. Accounting (Count III) and Injunctive Relief (Count V)

H&S's third and fifth causes of action are for accounting and injunctive relief. H&S seeks an accounting and injunctive relief as remedies for the alleged fraudulent transfers. (FAC ¶¶ 45–47, 54–56.) First, Defendants move to dismiss on the basis that H&S fails to allege a claim for fraudulent transfer, as "a valid cause of action is a prerequisite to obtaining accounting or injunctive relief." *See Nguyen v. JP Morgan Chase Bank*, 2012 WL 294936, at *4 (C.D. Cal. Feb. 1, 2012). As previously discussed, H&S states a plausible claim for actual fraudulent transfer, so its accounting and injunctive relief claims also stand. Second, Defendants argue the Court should dismiss the accounting and injunctive claims because these are remedies, not independent causes of action. Defendants, however, cite no authority that this is a ground to dismiss the claims. If H&S succeeds on its fraudulent transfer claim, it may seek injunctive relief or an accounting. Cal. Civ. Code § 3439.07(a). Defendants' motion to dismiss the third and fifth causes of action is **DENIED.**

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.  The constructive fraudulent transfer claim is **DISMISSED WITH FOURTEEN DAYS' LEAVE TO AMEND**.  With respect to the remaining causes of action, Defendants' motion is **DENIED**.

DATED:     June 21, 2019

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE