JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HINDS & SHANKMAN, LLP, <br><br> Plaintiff, <br><br> v. <br><br> RICHARD LAPIDES, et al., <br><br> Defendants. | Case No.: CV 18-10731-CJC(SKx) <br><br><br> ORDER DISMISSING CASE |

## I. INTRODUCTION

Plaintiff Hinds & Shankman, LLP ("H&S") brings this action against Defendants Richard A. Lapides, Janis Lapides, and Does 1 through 10. (Dkt. 33 [Second Amended Complaint, hereinafter "SAC"].) Before the Court are the parties' responses to the Court's Order to Show Cause as to why the case should not be dismissed because H&S's

-1-

requested relief is not available as a matter of law. (Dkt. 55.) For the following reasons, this case is **DISMISSED** because H&S's requested relief is barred by the Texas Constitution's homestead exception.[1]

## II. BACKGROUND

This lawsuit arises out of Defendants' alleged obligation to pay H&S's attorneys' fees and costs incurred in connection with a Chapter 7 bankruptcy case. H&S is a California limited liability partnership with its principal place of business in Torrance, California. (SAC ¶ 1.) Richard A. Lapides ("Richard") and Janis Lapides ("Janis") are a married couple who are residents of Spicewood, Texas. (*Id.* ¶¶ 2–4.)

In 1987, nonparty Jay Johnson sold Richard a piece of real property in La Cañada Flintridge, California. (*Id.* ¶ 9.) Prior to the sale, Johnson had claimed that the raw land had water available to it for future development. (*Id.*) Later, Richard discovered Johnson had lied, sued him, and obtained a final judgment of over $1 million against Johnson. (*Id.*) Richard then attempted to collect on this judgment. (*Id.*) Unfortunately for Richard, on April 5, 2001, Jay and Debra Johnson filed a voluntary Chapter 7 case in the United States Bankruptcy Court for the Central District of California. (*Id.*) The Bankruptcy Court appointed Rosendo Gonzalez as the Trustee. (*Id.* ¶ 9.)

The Trustee employed H&S as the estate's general counsel and special litigation counsel to represent the Trustee in various causes of action against the debtors, their business entities, and the debtors' relatives. (*Id.* ¶ 11.) The estate, however, apparently lacked funds to pay for this legal representation. The Trustee approached Richard and asked him if he would be willing to help pay for the prosecution of two adversary

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15.

proceedings. In September 2004, Richard agreed to pay H&S's attorneys' fees and costs associated with the adversary proceedings. (*Id.* ¶ 12; *see also id.* Ex. 1.)

In 2014, the Bankruptcy Court held a trial on the Trustee's claims in the two consolidated adversary proceedings. (SAC ¶ 16.) The Bankruptcy Court found against the Trustee. (*Id.*) In June 2017, H&S filed an application for fees and expenses incurred in the adversary proceedings with the Bankruptcy Court. (*Id.* ¶ 18.) H&S also sought a money judgment against Richard for the amount of the fees and costs. (*Id.*) The matter proceeded to arbitration and, after a trial, the arbitrator ruled in H&S's favor. (*Id.* ¶¶ 20–21; *see id.* Ex. 3.) H&S then filed a petition before the Bankruptcy Court to confirm the award of fees and costs, and the Bankruptcy Court entered a judgment against Richard on December 21, 2018 for a total of $785,687.97 for damages, plus interest, and $70,491.91 for costs. (*Id.* ¶ 22; *see id.* Ex. 4.)

The instant dispute concerns Richard's sale of two properties in California and subsequent purchase of property in Texas, allegedly done to avoid H&S's recovery on its fee award. The first property at issue is located at 5500 La Forest Drive in La Cañada, California. (*Id.* ¶ 23.) Around 1994, Richard transferred his entire ownership interest in the La Forest Drive property to his wife, Janis. (*Id.* ¶ 24.) On May 19, 2016, Janis sold her interest in the La Forest Drive property to Margarita Kazaryan for $850,000. (*Id.* ¶ 25.) The second property at issue is located at 5107 Castle Road in La Cañada, California. (*Id.* ¶ 26.) On July 17, 2017, Richard and Janis, who jointly owned the Castle Road property, sold it for $1,150,000 to Brandon and Cori Cipes. (*Id.* ¶ 27.) H&S alleges that Richard and Janis used the proceeds from these two sales to purchase real property located at 23704 Replica Road in Spicewood, Texas, for $1,210,096 on August 4, 2017. (*Id.* ¶¶ 25, 28.) Richard and Janis allegedly purchased the Texas real property to avoid paying Richard's obligation to H&S. (*Id.* ¶ 29.) Purchasing real property in Texas allowed them to take advantage of Texas's homestead exemption laws, which

exempt the entire value of the Texas real property from collection. (*Id.*) The transfer allegedly rendered Richard and Janis insolvent and without nonexempt assets against which H&S could lawfully execute to recover its judgment. (*Id.*)

On December 28, 2018, H&S filed this action in federal court, claiming that Defendants fraudulently transferred their assets by selling their property in California and purchasing property in Texas. (Dkt. 1 [Complaint].) H&S seeks a relief in the form of "freezing the transferred equity from the liquidation of the [California properties] and then making this equity available to satisfy the Plaintiff's judgment against [Defendants]." (Dkt. 48 [Opp. to Defs.' Mot. to Dismiss] at 5.) Defendants contend that such relief is barred by the Texas Constitution's homestead exception. *See* Tex. Const. Art. 16, § 50(a). The Court ordered the parties to show cause as to why the case should not be dismissed because H&S's requested relief is not available as a matter of law. (Dkt. 55.)

## III. DISCUSSION

At issue here is whether the Texas Constitution exempts a homestead from the claims of creditors when such homestead was acquired using non-exempt funds with the specific intent of hindering creditors. The Texas Constitution provides that:

> (a) The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for:
>
> (1) the purchase money thereof, or a part of such purchase money;
>
> (2) the taxes due thereon;
>
> (3) an owelty of partition imposed against the entirety of the property by a court order or by a written agreement of the parties to the partition, including a debt of one spouse in favor of the other spouse resulting from a division or an award of a family homestead in a divorce proceeding;

(4) the refinance of a lien against a homestead, including a federal tax lien resulting from the tax debt of both spouses, if the homestead is a family homestead, or from the tax debt of the owner;

(5) work and material used in constructing new improvements thereon, if contracted for in writing, or work and material used to repair or renovate existing improvements thereon . . . .

(6) an extension of credit that:

    (A) is secured by a voluntary lien on the homestead created under a written agreement with the consent of each owner and each owner's spouse; . . . .

(7) a reverse mortgage; or

(8) the conversion and refinance of a personal property lien secured by a manufactured home to a lien on real property, including the refinance of the purchase price of the manufactured home, the cost of installing the manufactured home on the real property, and the refinance of the purchase price of the real property.

*See* Tex. Const. Art. 16, § 50(a).

"The purpose of the homestead exemption is to provide a secure home for the family against creditors." *Salomon v. Lesay*, 369 S.W.3d 540, 554 (Tex. App. 2012). Given this important purpose, Texas courts have been instructed to construe the exemption liberally, *see Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987), even though such liberal construction "sometimes directly assist[s] a dishonest debtor in wrongfully defeating his creditor," *Long Bell Lumber Co. v. Miller*, 240 S.W.2d 405, 406 (Tex. App. 1951). The homestead exemption "shields a family or single adult person's homestead from all but eight types of liens held by enumerated creditors." *Marincasiu v. Drilling*, 441 S.W.3d 551, 558 (Tex. App. 2014). "Any liens

against a homestead that are not specifically listed in the Texas Constitution are void." *Id.* at 558–59.

Defendants argue that because Texas's homestead exemption does not contain an exception for a lien arising from the alleged fraudulent transfer of nonexempt funds into the homestead, the relief H&S seeks is unavailable as a matter of law. The Court agrees. The Texas Constitution "provides prophylactic protection from all but the few specifically enumerated types of constitutionally permitted liens against homesteads." *Kendall Builders, Inc. v. Chesson*, 149 S.W.3d 796, 807 (Tex. App. 2004). When a party attempts to attach a type of lien to a homestead that is not among the enumerated exceptions, the lien is void. *See Saloman*, 369 S.W.3d at 556 (holding that the "lien on the [homeowner's] residential property for child support arrearages does not fall under any of the constitutional categories of debt for which a lien may attach to homestead property" and is therefore void). Because the type of lien H&S seeks also does not appear in the specifically enumerated list, it cannot be attached to Defendant's homestead.

Courts have been unwilling to expand the exceptions to Texas's homestead exemption beyond its text even when, as here, the exemption is utilized as a tool to hinder creditors. In *In re Reed*, a debtor sold $34,500 worth of nonexempt personal property just before filing for bankruptcy and applied the proceeds from the sales towards the liquidation of liens on his homestead. *See* 12 B.R. 41, 42 (Bankr. N.D. Tex. 1981). The trustee sought to claw back these funds, claiming that the homestead exemption did not apply given the debtor's fraudulent intent to frustrate his creditors. *Id.* The court disagreed and found that "Texas law has jealously protected the homestead from forced sale except under [the] very limited conditions" enumerated in the Texas Constitution. *Id.* at 43. Similarly, in *In re Moody*, the debtor made a series of property transfers in order to maximize the land he could claim as a homestead under Texas law in

anticipation of filing for bankruptcy. *See* 77 B.R. 566, 575 (S.D. Tex. 1987). The Court held that, although these conveyances were clearly motivated by a desire to frustrate creditors, the homestead exemption barred the court from ordering foreclosure on the property at issue. *See id.* H&S's claims are barred for the same reason.

In an attempt to bypass the text of homestead exemption, H&S relies on a line of Texas cases in which courts have imposed constructive trusts on real property being used as a homestead. Such reliance is misplaced. These cases stand for the proposition that "the homestead protection afforded by the Texas Constitution was never intended to protect stolen funds." *Bransom v. Standard Hardware, Inc.*, 874 S.W.2d 919, 928 (Tex. App. 1994) (imposing constructive trust on the proceeds of the sale of a homestead that was originally purchased with embezzled funds); *see also Byrom v. Penn*, 2016 WL 4447698, at *1 (Tex. App. Aug. 24, 2016) (affirming order compelling the sale of a homestead purchased with funds that an executor misappropriated from his mother's estate). In these cases, the impingement on the defendant's homestead right was justified by the fact that the property transferred to the homestead never belonged to the defendant in the first place. *See Baucum v. Texam Oil Corp.*, 423 S.W.2d 434, 442 (Tex. Civ. App. 1967). This rationale is inapplicable to Defendants here, because there is no allegation that the funds they used to purchase the Texas property were stolen or misappropriated. Rather, the funds used to purchase the Texas homestead came from Defendants' sales of the two California properties which they owned. (*See* SAC ¶¶ 25–28.)

Finally, although not binding authority, the Florida Supreme Court's decision in *Havoco of America, Ltd. v. Hill* lends further support to Defendants' position. *See* 790 So. 2d 1018 (Fla. 2001). There, the court was asked whether, under the Florida Constitution, a debtor's homestead is exempt from the claims of creditors when such homestead was acquired using non-exempt funds with the specific intent of hindering creditors. *See id.* Like the Texas Constitution, Florida's Constitution provides that—

outside of specifically enumerated exceptions—a homestead is exempt from forced sale by any court. Fla. Const. art. X, § 4. In *Havoco*, a debtor from Tennessee purchased a property in Florida using nonexempt funds in an attempt to shield his assets from a judgment creditor. *See* 790 So. 2d at 1019. The Court first noted that Florida's homestead exemption had long been construed liberally given its public policy implications. *See id.* at 1020. In light of this, the court declined to broaden the exceptions to the homestead exemption beyond those expressly enumerated. *See id.* at 1028. It held that the homestead exemption still applies where a debtor transfers nonexempt assets into an exempt homestead with the intent to hinder, delay, or defraud creditors. *Id.* Given the similarities between the Texas and Florida homestead exemptions, the Court finds the reasoning of the Florida Supreme Court to be relevant and persuasive to the issue presented here. Accordingly, the Court finds that Texas's homestead exemption—like Florida's—applies even when a debtor acquires the homestead using nonexempt funds with the intent of hindering its creditors.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Texas's homestead exemption bars it from ordering H&S's requested relief. Accordingly, this case is **DISMISSED** in its entirety.

DATED: October 8, 2019

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE